UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSEPH ORTIZ,

        Plaintiff,

v.                                    Case No. 3:22-cv-1343-BJD-JBT

FEDERAL BUREAU OF PRISONS,
et al.,

        Defendants.
_____

## ORDER OF DISMISSAL WITHOUT PREJUDICE

Plaintiff, Joseph Ortiz, a federal inmate who initiated this action when he was housed in a state-operated prison, filed a complaint for the violation of civil rights (Doc. 1; Compl.) and a motion to proceed *in forma pauperis* (Doc. 2).[1] Plaintiff names four Defendants: the Federal Bureau of Prisons (BOP); Colette Peters, the Director of the BOP; Dianne Taylor, Residential Re-Entry Specialist Supervisor for the BOP; and Ariel Guerrero, Residential Re-Entry Specialist for the BOP. *See* Compl. at 2-3.

---

[1] Plaintiff explains the BOP housed him in a state prison operated by the Florida Department of Corrections (FDOC) under an interstate compact. *See* Compl. at 7. A search of the BOP's website shows he is now housed at Orlando RRM. *See* BOP Inmate Locator, available at https://www.bop.gov/inmateloc/ (last visited June 6, 2023).

Plaintiff alleges the BOP and other Defendants violated his right to freely exercise his religion under the First Amendment by housing him in a Florida state prison because the FDOC does not permit him to have a beard of the length required by his faith. *Id.* at 4-5, 7-8. He contends that he informed the BOP of his circumstances, and Defendants Taylor and Guerrero directly or indirectly advised him in July 2022 that "a transfer would be initiated to accommodate the religious violations," but, at that time, a transfer request was denied. *Id.* at 9, 11. As relief, he seeks a permanent injunction prohibiting the BOP from "housing [him] in the Florida State prison system or anywhere that substantially burdens [his] religious freedom." *Id.* at 6.

The Prison Litigation Reform Act (PLRA) requires a district court to dismiss a complaint if the court determines it is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1). Since the PLRA's "failure-to-state-a-claim" language mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts apply the same standard. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). *See also Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)). In reviewing a complaint, a court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding *pro se*, but need not accept as true legal conclusions. *Iqbal*, 556 U.S. at 678.

Because Plaintiff seeks to sue federal officials, as opposed to state officials employed by the FDOC, *Bivens*[2] applies, not 42 U.S.C. § 1983. "The effect of *Bivens* was, in essence, to create a remedy against federal officers, acting under color of federal law, that was analogous to the [§] 1983 action against state officials." *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995). But claims arising under *Bivens* are not coextensive with those arising under § 1983. *See Ziglar v. Abbasi*, 582 U.S. 120, 130-31 (2017). Indeed, since deciding

---

[2] *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 389, 397 (1971) (recognizing an implied right of action for damages against a federal agent who, acting under "color of his authority," violated the plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures).

3

*Bivens*, the Supreme Court has extended *Bivens* damages remedies in only two other contexts: gender discrimination in the workplace and deliberate indifference to serious medical needs in prison. *See id.* at 131 (citing *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980)).

Recently, the Supreme Court held "there is no *Bivens* action for First Amendment retaliation." *Egbert v. Boule*, 142 S. Ct. 1793, 1807 (2022).[3] In *Egbert*, the Court reasoned, "the Judiciary is ill equipped" to extend a damages remedy for an alleged constitutional violation by a federal employee, "especially . . . when it comes to First Amendment claims." *Id.* at 1800, 1802, 1808-09. The Court stressed, as it did previously, "[I]in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Id.* at 1800. *See also Ziglar*, 582 U.S. at 137 ("[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy."); *Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020) ("With the demise of federal general common law, a federal court's authority to recognize a damages remedy must rest at bottom on a

---

[3] Though *Egbert* addressed a First Amendment retaliation claim, the Supreme Court expressed doubt even before *Egbert* whether a claim under the Free Exercise Clause was cognizable under *Bivens*. *See Iqbal*, 556 U.S. at 676 (noting the Court had never recognized "an implied damages remedy under the Free Exercise Clause").

statute enacted by Congress . . . and no statute expressly creates a *Bivens* remedy." (internal citation omitted)). As such, when considering whether to extend a *Bivens* remedy into a new context, district courts must consider a single question: "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803.

When an aggrieved party has available to him an alternative "remedial scheme" through which he may seek relief for an alleged wrong, that fact "alone … is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 1804 (quoting *Ziglar*, 582 U.S. at 137) (internal quotation marks omitted). This is so even if the available remedial scheme cannot provide "complete relief" to the aggrieved party or is not as effective as a civil action would be. *Id.* at 1804, 1806 (holding the appellate court "plainly erred when it created causes of action of [the plaintiff's] Fourth Amendment excessive-force claim and First Amendment retaliation claim" in part because "Congress has provided alternative remedies for aggrieved parties in [the plaintiff's] position").

Plaintiff's claims arise in a new *Bivens* context because they are meaningfully different from those cases in which the Court has extended *Bivens* remedies to redress serious constitutional violations: unreasonable search and seizure; gender discrimination in the workplace; and deliberate

indifference to serious medical needs in prison. *Bivens*, 403 U.S. at 397; *Davis*, 442 U.S. at 248; *Carlson*, 446 U.S. at 19. And in light of the Supreme Court's recent decisions emphasizing the limits of the Judiciary to extend *Bivens* remedies, the Court finds such an extension is not warranted on these facts. *See Egbert*, 142 S. Ct. at 1803, 1806; *Ziglar*, 582 U.S. at 137; *Hernandez*, 140 S. Ct. at 742. As an inmate, Plaintiff has access to an administrative grievance process to seek relief for perceived wrongs. Indeed, Plaintiff accessed an administrative scheme when he complained about his circumstances and was told a transfer would be considered. *See* Compl. at 9-10. That the transfer initially was denied does not mean Plaintiff should be permitted to proceed under *Bivens*. *See Egbert*, 142 S. Ct. at 1804.

Moreover, to the extent Plaintiff names some Defendants simply because they are supervisors, his claims would not be cognizable regardless of whether a *Bivens* remedy would otherwise be available. *See Ziglar*, 582 U.S. at 140 ("[A] *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others."). Finally, even if Plaintiff had stated a viable claim, it appears he now has been transferred to a federal facility operated by the BOP, mooting part of his request for injunctive relief. *See Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988). To the extent Plaintiff requests that the Court order the BOP to refrain from again transferring him to any prison

where his religious freedom may be substantially burdened, he is advised that "inmates usually possess no constitutional right to be housed at one prison over another." *Barfield v. Brierton*, 883 F.2d 923, 936 (11th Cir. 1989). *See also McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise.").

Accordingly, it is

**ORDERED:**

1. This case is **DISMISSED without prejudice**.

2. The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

3. The **Clerk** shall and send a copy of this Order to Plaintiff at Orlando RRM and update the docket accordingly.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of June 2023.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:   Joseph Ortiz